**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

PEDRO RODRIGUEZ,

                          Plaintiff,

        - v -                                    Civ. No. 9:09-CV-1336
                                                                    (TJM/RFT)

DR. THOMPSON, *NYDOC Employee*; KAREN BELLAMY,
*NYCOD Employee*; SUPERINTENDENT, *Great Meadow
Corr. Facility*,

                        Defendants.

**APPEARANCES:**                                 **OF COUNSEL:**

PEDRO RODRIGUEZ
Plaintiff, *Pro Se*
07-A-6177
Central New York Psychiatric Center
P.O. Box 300
Marcy, New York 13404

HON. ERIC T. SCHNEIDERMAN               BRIAN J. O'DONNELL, ESQ.
Attorney General of the State of New York     Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

    *Pro se* Plaintiff Pedro Rodriguez, currently an inmate at Central New York Psychiatric Center, brings this civil rights action, pursuant to 42 U.S.C. § 1983, alleging that, during his incarceration at Great Meadow Correctional Facility, Defendants violated his constitutional rights when they denied him proper medical treatment, use of a telephone and a razor, visits with his family, and also failed to adequately investigate his complaints. Dkt. No. 1, Compl. Defendants filed a Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt.

No. 20. On two separate occasions, this Court *sua sponte* extended Plaintiff's time to respond to Defendants' Motion, yet, to date, Plaintiff has not submitted any opposition thereto. *See* Dkt. Nos. 24 & 28. For the following reasons, this Court recommends **granting** Defendants' Motion and **dismissing** the Complaint.

## I. DISCUSSION

### A. Standard of Review

On a motion to dismiss, the allegations of the complaint must be accepted as true. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972). "Generally, in determining a 12(b)(6) motion, the court may only consider those matters alleged in the complaint, documents attached to the complaint, and matters to which the court may take judicial notice." *Spence v. Senkowski*, 1997 WL 394667, at *2 (N.D.N.Y. July 3, 1997) (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)). Moreover, "even if not attached or incorporated by reference, a document 'upon which [the complaint] *solely* relies and which is *integral to the complaint*' may be considered by the court in ruling on such a motion." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)).

The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *See Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn*, 373 U.S. 746, 754 n. 6 (1963); *see also Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008). Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949 (2009). Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. at 1960 (citing *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. at 1949. This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. Thus, in spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts [which he or she] has not alleged, or that the defendants have violated the . . . laws in ways that have not been alleged." *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983). The process of determining whether a plaintiff has "nudged [his] claims . . . across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. at 1950-51.

With this standard in tow, we consider the plausibility of Plaintiff's Complaint.

### B. Plaintiff's Claims

Plaintiff brings this action against three Defendants: 1) Doctor Thompson, a Physician at Great Meadow; 2) Karen Bellamy, the Director of the Inmate Grievance Program (IGP); and 3) the unnamed Superintendent of Great Meadow, whom Defendants identify as Thomas LaValley.[1] In accordance with the applicable standard of review recited above, this Court is bound to take as true

---

[1] *See* Dkt. No. 11, Notice of App.

the factual allegations in the Complaint.  Such deference, however, is not accorded to conclusory statements.  The body of Plaintiff's *pro forma* § 1983 Complaint is seven pages long, with an additional twenty-five pages of Exhibits.  Within his Complaint, Plaintiff asserts that the events giving rise to his claims occurred at Great Meadow in January 2009 and continued through at least September 10, 2009, the date his Complaint was signed.  Compl. at p. 2.  The section of the Complaint that sets forth all the facts in support of his action states the following:

> I was diagnosed with turburcleosis [sic] while incarcerated [and] I was denied a translator to explain this disease.  I have issues with my stomach and prostrate that are going [sic] untreated.  My prescribed medicene [sic] has severe adverse affects [sic] on me.  Dr. Thompson refuses to address and treat the above issues.  I've filed many complaints to which only half of [sic] are even addressed.  Karen Bellamy refuses to provide a fair and adaquet [sic] investigation to my complaint with my health care issues.
> The Superintendent has illegaly [sic] denied me phone calls and visits because of my disease and accuses me of not cooperating with medical staff while at the same time dening [sic] me a translator, making it impossible for me to cooperate.

*Id*. at p. 3.

In expounding upon the nature of his injuries, Plaintiff states he has not received "any proper medical treatment and [his] disease and issue[s] are progressing" while his body is deteriorating. *Id*.  And, as relief for purported constitutional violations, Plaintiff seeks immediate medical attention, an explanation of his disease, the right to communicate with his family, and two million dollars from each Defendant plus "triple damages" that have resulted from the negligent health care. *Id*. at p. 5.

Simply put, Plaintiff claims that Dr. Thompson failed to address his health issues, Karen Bellamy refused to investigate his complaints, and Superintendent LaValley denied him phone calls, family visits, and a razor.  Taken alone, these statements are patently conclusory.  Conspicuously absent are any specific details underlying his allegations.  Thus, this Court is faced with a void by

which no factual allegations can be taken as true. In lieu of asserting specific factual allegations, Rodriguez, perhaps, relies upon the multitude of Exhibits he attached to his Complaint. In view of his *pro se* status, the Court has reviewed these Exhibits in order to ascertain some modicum of facts upon which we may review the adequacy of Plaintiff's claims. *Koulkina v. City of New York*, 559 F. Supp. 2d 300, 314 (S.D.N.Y. 2008) (citations omitted) (noting that a court may consider exhibits attached to a complaint as part of the pleading). Unfortunately, many of the Exhibits, which are a hodgepodge compilation of Inmate Grievances, pre-date the time-frame stated in the Complaint, though none seem to be outside the applicable three-year statute of limitations. *See Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (noting that the applicable limitations period for § 1983 actions in New York is three years). But even more troublesome is the fact that many of these Exhibits belie the conclusory claims set forth in the Complaint.

In support of their Motion to Dismiss, Defendants provide further documentation evidencing Plaintiff's failure to state a claim upon which relief can be granted. These documents include Plaintiff's Referral Health History and a Disciplinary Proceeding Hearing Packet. Dkt. Nos. 20-1 & 20-2. We agree, in part, that these documents may have been incorporated into the Complaint by reference. It is questionable, however, whether Plaintiff truly relied upon these documents in drafting his Complaint thereby rendering the documents "integral" to the Complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *see also Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) ("[E]ven if not attached or incorporated by reference, a document upon which [the complaint] *solely* relies and which is *integral to the complaint* may be considered by the court in ruling on such a motion.") (internal quotation marks and citations omitted). Nevertheless, because Plaintiff has not lodged any objection thereto, and because the information contained in the

Defendants' Exhibits are referenced in the Complaint or in Exhibits attached to the Complaint, the Court will review these documents in addressing the Defendants' Motion. The Court will address each of Plaintiff's claims, and the contradictions posed by the documented evidence, *seriatim*.

### *1. Medical Claims*

The Eighth Amendment prohibits the infliction of cruel and unusual punishment and is applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Robinson v. California*, 370 U.S. 660, 666-67 (1962) (cited in *Tramell v. Keane, et al.*, 338 F.3d 155, 161 (2d Cir. 2003)). To state an Eighth Amendment claim for denial of adequate medical care, a prisoner must demonstrate that prison officials acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The plaintiff must allege conduct that is "'repugnant to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.'" *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y. 1992), *aff'd*, 970 F.2d 896 (2d Cir. 1992) (quoting *Estelle v. Gamble*, 429 U.S. at 102, 105-06). This standard contains both objective and subjective elements. *Smith v. Carpenter*, 316 F.3d 178, 183 (2d Cir. 2003). "The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberative indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind." *Id.* at 183-84 (citing *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) & *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)).

Even if we were to find, for purposes of this Motion, that Plaintiff's tuberculosis constitutes a serious medical need, with great ease we find that Plaintiff has fallen woefully short in attributing an improper state of mind to Defendant Thompson. In fact, according to the Medical Referral History, provided by Defendants, from the time of his admission to the Department of Correctional

Services's custody in November 2007 through the end of November 2009, when this action commenced, Plaintiff has had seventy-seven (77) different referrals to internal and external medical providers, many of which he refused. Dkt. No. 20-1, Christina Oshier Aff., dated Mar. 31, 2010, at ¶ 4 & Ex. 1. Plaintiff's refusal of medical treatment is specifically concentrated during the months at issue in the Complaint, wherein out of a total of thirty-three (33) scheduled visits, Plaintiff refused eighteen (18). *Id.*, Ex. 1 at pp. 9-11. A prisoner who declines medical treatment cannot turn around and sue the medical professional whose judgment the prisoner has questioned and even defied. *Jones v. Smith*, 784 F.2d 149, 151-52 (2d Cir. 1986) (affirming a lower court ruling that a prisoner who declines medical treatment cannot establish an Eighth Amendment claim for medical deliberate indifference); *Hardy v. Diaz*, 2010 WL 1633379, at *6 n.12 (N.D.N.Y. Mar. 30, 2010) (noting that skipping medical appointments and failing to comply with treatment directions can undermine an Eighth Amendment medical indifference claim).

Furthermore, after reviewing Plaintiff's Grievances, it appears to the Court that his complaints regarding medical care are not targeted solely at a lack of treatment, but rather the type of treatment received and his perception of a failure to obtain tangible results regarding improvement of his health. *See* Compl. at pp. 12, 14, & 20 (complaining that his multiple outside visits have not addressed his health issues and, instead, result in prescribed medication that does not help); 15, 19, & 26 (stating that he has been examined continuously for years and still experiences pain); 27 & 29-32 (recounting treatment received over time, which he finds dissatisfactory). The documents submitted by Plaintiff suggest nothing more than a disagreement regarding the type of treatment he received. But, the Second Circuit has long adhered to the principle that a prisoner does not have the right to the treatment of his choice, so long as the treatment provided is adequate.

*Chance v. Armstrong*, 143 F.3d at 703 (citing *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986)). Furthermore, "prison officials have broad discretion to determine the nature and character of medical treatment which is provided to inmates." *LaFave v. Clinton County*, 2002 WL 31309244, at *3 (N.D.N.Y. Apr. 3, 2002) (citing *Murphy v. Grabo*, 1998 WL 166840, at *4 (N.D.N.Y. Apr. 9, 1998)). It is not this Court's obligation to "reconcile [a] plaintiff's own pleadings that are contradicted by other matters asserted or relied upon or incorporated by reference by a plaintiff in drafting the complaint." *Fisk v. Letterman*, 401 F. Supp. 2d 362, 368 (S.D.N.Y. 2005) (citing, *inter alia*, *Colodney v. Continuum Health Partners, Inc.*, 2004 WL 829158, at *7 (S.D.N.Y. Apr. 15, 2004), for the proposition that a plaintiff who submits a pleading which contradicts his factual assertions cannot survive a motion to dismiss and leave to amend should be denied as futile); *see also Koulkina v. City of New York*, 559 F. Supp. 2d at 314 (quoting *Fisk*).

Because his Eighth Amendment claim is undermined by the Exhibits attached to his Complaint and by the information provided by Defendants, we find that Plaintiff has not stated an Eighth Amendment claim and recommend dismissal. We are aware of the Second Circuit's preference that we allow the *pro se* inmate an opportunity to amend his Complaint before outright dismissing, however, given the documented evidence, such attempts would be futile.

### 2. *Remaining Alleged Constitutional Violations*

As noted above, Plaintiff asserts that Defendant Bellamy, presumably in her role as Director of the IGP, failed to properly investigate Plaintiff's complaint and Defendant LaValley, presumably in his role as Facility Superintendent, denied Plaintiff certain privileges, including family visitation and use of a telephone and razor. Plaintiff's pursuit of these claims falters for two reasons. First, Plaintiff has not alleged that Defendant Bellamy and/or Defendant LaValley were personally

involved in any wrongdoing.  Second, as with his Eighth Amendment claim against Defendant Thompson, the documented evidence contradicts Plaintiff's allegations.

With regard to personal involvement, instead of asserting instances wherein Defendants Bellamy and LaValley actively participated in or condoned some wrongdoing, Plaintiff seems to rely upon their positions as supervisors in holding them accountable for perceived wrongs.  However, "[i]t is well-settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citations omitted).  Moreover, "the doctrine of *respondeat superior* cannot be applied to section 1983 actions to satisfy the prerequisite of personal involvement." *Kinch v. Artuz*, 1997 WL 576038, at *2 (S.D.N.Y. Sept. 15, 1997) (citing *Colon v. Coughlin*, 58 F.3d 865, 874 (2d Cir. 1995) & *Wright v. Smith*, 21 F.3d at 501) (further citations omitted).

Pointedly, "mere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim." *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (quoting *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985)); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (defendant may not be held liable simply because he holds a high position of authority).  A supervisory defendant may have been personally involved in a constitutional deprivation within the meaning of § 1983 if he or she:  (1) directly participated in the alleged infraction; (2) after learning of the violation, failed to remedy the wrong; (3) created a policy or custom under which unconstitutional practices occurred or allowed such policy or custom to continue; or (4) was grossly negligent in managing subordinates who caused the unlawful condition or event.  *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986) (citations omitted).  Because Plaintiff has failed to provide even the minimally required facts to implicate these

supervisory Defendants in any wrongdoing, we recommend dismissal of his claims against them.

In any event, were we to once again, in light of his *pro se* status, peer beyond the Complaint and scour the documents for facts to support Plaintiff's claims, we would still come up woefully short. As with his Eighth Amendment claim, the documents provided by Plaintiff and Defendants negate the notion that a constitutional violation has occurred. With regard to Plaintiff's claim against Defendant Bellamy, it appears that each of the Grievances provided by Plaintiff were adequately investigated, though presumably not by Defendant Bellamy herself given her high level position. In one instance, Defendant Bellamy sent Plaintiff a letter in response to a letter he authored in June 2009 regarding the processing of his grievances. Compl. at p. 9. Therein, Defendant Bellamy explains that his particular grievance was not appealed by him and she advised him to follow the proper appeal procedure and not send grievances or appeals directly to the Central Office Review Committee. *Id*. This Court cannot fathom how this written response equates to the allegation that Defendant Bellamy personally failed to investigate Plaintiff's Grievances. Plaintiff's dissatisfaction with the results of his Grievances does not correspond to a failure to investigate or respond. In light of Plaintiff's failure to state any plausible cause of action against Defendant Bellamy, and in light of the contradictory evidence, we recommend dismissal of the claims against Defendant Bellamy with no leave to replead.

Lastly, with regard to Defendant LaValley, this Court is not clear as to the precise nature of Plaintiff's claims. Putting aside for the moment the question of whether the Superintendent was personally involved in these privilege deprivation decisions,[2] this Court is unaware of a

---

[2] A considerably poignant question given the fact that Defendant LaValley was apparently not the Superintendent of Great Meadow during the time-frame referenced in the Complaint. *See generally* Compl. Exs. (wherein any documents containing a Great Meadow Superintendent signature reflect the name David Rock); Dkt. No.
(continued...)

constitutional guarantee to such privileges. It appears that Plaintiff was denied his phone privileges in connection with a disciplinary hearing. Dkt. No. 20-2, Brian J. O'Donnell, Esq., Affirm., dated Mar. 31, 2010, Ex. 1. Because Plaintiff has not alleged that he was subjected to atypical and significant hardship in relation to the ordinary incidents of prison life as a result of this disciplinary hearing, we decline to address whether a due process violation ensued therein. *Sandin v. Conner*, 515 U.S. 472, 484 (1995). From the Grievances provided by Plaintiff, it further appears that his phone privileges were withheld in order to provide him with an incentive to cooperate with his tuberculosis testing, and he was denied re-issuance of a razor pending the investigation into his inability to produce his razor upon request. *See, e.g.*, Compl. at p. 17.

It is clear to this Court that Plaintiff has failed to assert a cognizable cause of action against Superintendent LaValley and we therefore recommend dismissal of this Defendant without leave to replead.

## II. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Defendants' Motion to Dismiss (Dkt. No. 20) be **GRANTED** and the entire Complaint be **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action in accordance with the Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file

---

[2](...continued)
20-3, Defs.' Mem. of Law at p. 14 (noting that Defendant LaValley was not the Superintendent at the time). Presumably, because Plaintiff only named "Great Meadow Corr. Facility Superintendent" as a Defendant, the current Superintendent was served with process and joined as a Defendant. Nevertheless, the same analysis would apply even if Plaintiff had named the proper Superintendent.

written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

Date:   January 3, 2011
        Albany, New York

_____
RANDOLPH E. TREECE
United States Magistrate Judge